{¶ 18} Respectfully, I dissent.
 {¶ 19} The natural mother denied her mother (the child's grandmother) visitation with the minor child because the grandmother and other members of the family constantly harangued the child about the unsuitability of the mother and her live-in boyfriend and because, on at least one occasion, the grandmother refused to return the child after visitation, resulting in law enforcement intervention to effect the child's return.
 {¶ 20} Although, as the majority points out, the magistrate's report goes on at length about a "bond" between the child and his grandmother, it neglects to mention that the report in no way addresses the priority of the mother's wishes in this matter.
 {¶ 21} Troxel v. Granville (2000), 530 U.S. 57, 120 S.Ct. 2054,147 L.Ed.2d 49, requires an analysis that gives special weight to the preferences of the mother. In Troxel, the United States Supreme Court held unconstitutional a grandparent visitation statute that failed to accord the wishes of a natural parent regarding the child's visitation with a third party special weight. The Supreme Court found that in light of extensive Supreme Court precedent, "it cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children," a liberty interest the Court recognized as "perhaps the oldest of the fundamental liberty interests recognized by this Court." Id. at 65-66. Accordingly, the Supreme Court stated:
 {¶ 22} "[S]o long as a parent adequately cares for his or her children (i.e., is fit) there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." Id. at 68.
 {¶ 23} When a court does intervene, it must provide protection for the parent's fundamental constitutional right to make decisions concerning the rearing of his or her children. Id. at 69-70. Consequently, "if a parent's decision of the kind at issue here [the child's visitation with a third party] becomes subject to judicial review, the court must accord atleast some special weight to the parent's own determination." Id. at 70 (emphasis added).
 {¶ 24} Here, the magistrate's report does not even address this special weight; it merely assumes that because the child and grandmother are "bonded," the grandmother's proposed visitation schedule should be imposed against the wishes of the natural mother. The magistrate did not extend her analysis to conclude that while visitation with the grandmother might be "in the best interests" of the child, a lack of visitation with the grandmother would be "against the best interests" of the child. Only by analyzing the situation in the obverse can the requirement that the decision of the natural parent be given special weight be fulfilled.
 {¶ 25} The magistrate's report does precisely what Troxel prohibits. The findings of the magistrate are limited to whether visitation would be in the best interests of the child, concludes the answer to be "yes," and proceeds to order visitation. Troxel, however, indicates that to overcome the "special weight" to be accorded a parent's childrearing decisions, "there must be some showing of compelling reasons and circumstances to disregard the parent's wishes." Oliver v. Feldner, 149 Ohio App.3d 114,2002-Ohio-3209, at ¶ 68. Here, the magistrate's report makes no mention of any compelling reasons from the evidence presented in the case to indicate the court should disregard the mother's desires concerning visitation between her son and the grandmother. Moreover, the report makes no finding that the mother is unfit to make such a decision.
 {¶ 26} Accordingly, I would reverse the trial court's order and affirm the parent's paramount and fundamental right to make decisions concerning the upbringing and welfare of her own child.